IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JESUS ROBERTO VILLARREAL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:15-CV-219-D |
| | § | |
| RILEY W. JOHNSON, et al., | § | |
| | § | |
| Defendants. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION TO GRANT DEFENDANTS ARMENDAREZ AND AUNG'S JOINT MOTION FOR SUMMARY JUDGMENT ON THE DEFENSE OF QUALIFIED IMMUNITY

Before the Court is Defendants ARMENDAREZ and AUNG's Joint Motion for Summary Judgment ("Joint Motion"), with a supplemental brief in support and appendix of evidence. [ECF 46 and 48]. Plaintiff JESUS ROBERTO VILLARREAL ("Villarreal"), proceeding pro se, filed a Response to the Joint Motion. [ECF 67]. This Court has reviewed all the summary judgment evidence identified in this paragraph and all the arguments of the parties set forth in these documents.

This case arises out of plaintiff's claims under 42 U.S.C. § 1983 for excessive force in violation of the Eighth Amendment by defendants JOSE ARMENDAREZ ("Armendarez") and HTOO AUNG ("Aung"). These claims arise from an incident where Villarreal assaulted another Texas Department of Criminal Justice ("TDCJ") Officer, Sergeant Riley W. Johnson[1] ("Johnson"), and received a disciplinary case for the assault. Villarreal acknowledges the initial assault and claims he was trying to resolve a disciplinary case he received the day before from defendant Armendarez.

---

[1] Officer Johnson was dismissed from this lawsuit by judgment on November 30, 2018, after plaintiff was unable to effectuate service on this party.

I. THE FACTUAL EVIDENCE BEFORE THE COURT

A. FACTUAL OVERVIEW

Villarreal is an inmate confined to the custody of TDCJ and is housed at the Clements Unit. Villarreal seeks compensatory and punitive damages and court costs for alleged violations of his Eighth Amendment rights against excessive force. This case arises from a single incident where force was used in response to an altercation between Villarreal and a prison guard. Villarreal received two relevant disciplinary cases from TDCJ, and these cases were never overturned.

B. CHRONOLOGY OF EVENTS

*1. January 31, 2015.*

According to allegations in the Amended Complaint, on January 31, 2015 at approximately 3:50 a.m., Villarreal approached Johnson to discuss notice of a disciplinary case Villarreal received the day before, written by defendant Armendarez. The discussion escalated to a verbal confrontation; Villarreal admits he then swung his fist twice at Johnson. The first swing missed connecting with Johnson's person, but the second punch hit Johnson in the chest area. In response to the physical assault, Johnson punched Villarreal in the face and shoved him to the ground. Other officers arrived at the scene to help Johnson subdue Villarreal. These facts appear undisputed by all parties.

Villarreal further alleges three TDCJ officers, Johnson, Aung, and Williams, were "punching, kicking, and hitting" him with unknown objects after he was on the ground from the punch (and shove) by Johnson. [Affidavit of Villarreal attached to MSJ Response, ECF 67, p. 8]. Villarreal claims he lost consciousness during the beating and later awakened while being transported to the hospital. *Id*. Villarreal further asserts that other unnamed TDCJ officers were

present during the claimed use of force by Johnson, Aung, and TDCJ officer Williams and these officers failed to respond appropriately to the force used. *Id*. These facts are disputed by the defendants.

Villarreal does not renew his claims that Armendarez was present at the scene and failed to stop the excessive force; in fact, Villarreal states he has "expressed his wish to drop Armendarez from the suit and replace him with the other guilty parties." *Id*. at 6.

  2.  *Disciplinary Cases.*

On February 5, 2015, a disciplinary hearing was held regarding the January 31, 2015 incident discussed above and made the basis, at least in part, of Villarreal's claims in this suit. Villarreal was found guilty of assaulting Johnson by "striking him in the chest area" with his fist. [MSJ Exhibit D, ECF 48-4, p. 20]. Because of this finding, Villarreal lost 180 days of good time, 45 days of recreation, 45 days of commissary and was placed in solitary for 10 days. *Id*. at 20.

Also, on February 5, 2015 a second disciplinary hearing was held regarding the January 30, 2015 incident where Armendarez filed an "out of place" violation on Villarreal. Villarreal was found guilty and received 30 days loss of recreation and commissary because of this violation. *Id*. at 29. This disciplinary case was the subject of the altercation that occurred between Villarreal and Johnson on January 31, 2015.

  II. <u>VILLARREAL'S CLAIMS FOR RELIEF AGAINST ARMENDAREZ AND AUNG</u>

Villarreal makes the following claims in his Amended Complaint:

Excessive Force Under the Eighth Amendment by:

  a.  Continuing to punch, hit, and kick Villarreal after he was on the ground and subdued.

  b.  Failing to intervene and stop excessive force used by other officers.

III. <u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A qualified immunity defense, however, alters the usual summary judgment burden of proof, such that governmental employees need only assert the defense in good faith, putting forth no evidence, to shift the burden to the non-movant to show the defense does not apply. *Davalos v. Johns*, 2013 WL 1820313, at *3-4 (N.D. Tex. Apr. 30, 2013)(citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). The non-movant must demonstrate how specific evidence in the record, and all reasonable inferences therefrom, viewed by the court in a light most favorable to the non-movant, presents a genuine, material fact dispute for trial regarding all essential elements of the claim(s). *Id.* at 4. "Conclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment." *Id.* Plaintiff's failure to produce proof as to *any* essential element of the claim renders all other facts regarding that claim immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007). Summary judgment is mandatory as to the claim in question if plaintiff fails to meet this burden. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994)(en banc)(per curiam).

Qualified immunity is a defense that protects government officials from suit when they exercise the discretionary functions of their office. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815

(1982). In order to overcome a defense of qualified immunity, a plaintiff must establish that: "(1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established at the time of the challenged conduct,'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (citing *Ashcroft v. al-Kidd*, l31 S.Ct. 2074, 2080 (2011)). Plaintiff must demonstrate that the defendant's conduct was objectively unreasonable considering the legal rules clearly established at the time of her actions. *Thomas v. City of Dallas*, 175 F.3d 358 (5th Cir. 1999). Conclusory allegations of wrongdoing will not satisfy these requirements. *Geter v. Fortenberry*, 849 F.2d 1550, 1553 (5th Cir. 1988). The court may examine these factors in any order. *Pearson v. Callahan*, 555 U.5.223 (2009), *overruling in part Saucier v. Katz*, 553 U.S. 194 (2001). It is a plaintiff's burden to present evidence that a defendant is not entitled to qualified immunity when the defense is raised. *See Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001).

    Claims of qualified immunity are not judged on twenty-twenty hindsight, or in light of knowledge ascertained after an event, but by looking through the eyes of the public official, considering what that official knew about the situation at the relevant time. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *Poole v. City of Shreveport*, 691 F.3d 624,630 (5th Cir. 20l2). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 34l (1986). "Pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *See Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (emphasis in original omitted). If officers of reasonable competence could disagree as to whether

the plaintiff's rights were violated, the officer's qualified immunity remains intact. *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (citing *Malley*, 475 U.S. at 341).

### IV. THE LAW ON EXCESSIVE FORCE UNDER THE EIGHTH AMENDMENT

A. Exhaustion of Administrative Remedies

Defendants Aung and Armendarez argue that Villarreal has failed to exhaust his administrative remedies through the grievance process. The exhaustion requirement mandates exhaustion of all administrative procedures before an inmate can file any suit challenging prison conditions. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). The purpose of the grievance is to alert prison officials to a problem, not to notify an official that he may be subjected to a potential lawsuit. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

Defendants substantially argue that Villarreal was required to specifically name Aung and Armendarez in his grievance procedures to bring suit, despite acknowledging Villarreal filed both a Step 1 and Step 2 grievance about Johnson that clearly articulated other individuals were involved in the incident and listed the time and specific nature of his complaint. In fact, a Use of Force Report was immediately completed after the incident. [MSJ Exhibit B, ECF 48-2]. TDCJ was thus notified of Villarreal's complaint and his allegations of excessive force by any actor involved. Although this situation was unique in that defendants now allege neither Armendarez nor Aung was present during the use of force, the grievance process is not designed to provide notice to particular individuals about the potential for a lawsuit. *See Johnson*, 385 F.3d at 515. Thus, the Court finds Villarreal properly exhausted his administrative remedies.[2]

---

[2] The Court previously issued Findings, Conclusions and a Recommendation regarding Villarreal's request to amend his pleadings to add new parties. Villarreal wished to add the individuals not named specifically in the grievances. The Court denied adding these parties because Villarreal was aware of their existence for some time. The same reasoning applies to defendants to this suit – despite deficiencies in identifying officers in the grievance by Villarreal, a Use of Force Report was created to determine the individuals involved, which – if reviewed in a timely fashion – would have provided all parties with notice of who was involved in this incident, and who was not.

B. *Heck* Bar

The Supreme Court has held in order to recover damages for allegedly unconstitutional harm caused by actions that would render a conviction or sentence invalid, a section 1983 plaintiff must prove the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also Boyd v. Biggers*, 31 F.3d 279 283 (5th Cir. 1994).

The *Heck* requirement was extended to prison disciplinary cases by *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The application of the *Heck* and *Balisok* doctrines to a case depends on whether a judgment in the plaintiff's favor would necessarily imply the invalidity of his conviction or confinement. *Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996). The *Heck* doctrine is inapplicable when the section 1983 action does not implicate the validity of a conviction or the duration of confinement. *Muhammad v. Close*, 540 U.S. 749, 751-52 (2004).

In this case, Villarreal was charged with a major disciplinary case for assaulting TDCJ officer Johnson and the factual finding showed Villarreal punched officer Johnson in the chest without any physical provocation on the part of Johnson. Although Villarreal's section 1983 suit does not dispute the factual finding that he struck officer Johnson, his allegations in this suit of excessive force – where he must argue that Johnson and other officers used force maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to restore discipline – challenges a need to restore discipline. *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992). By challenging the need to restore discipline, Villarreal challenges that his actions in assaulting officer Johnson were such that force used to subdue him was unnecessary. Because

self-defense and defense of others is a defense to assault charges in Texas, Villarreal's excessive force claims against the officers who used force in responding to his assault on another officer is barred by the *Heck* doctrine. *See Sappington v. Bartee*, 195 F.3d 234, 236 (5th Cir. 1999) (finding *Heck* prevented excessive force claim against an officer acting in self-defense, when section 1983 plaintiff was convicted of assaulting that same officer).

The Court notes that *Sappington* involved aggravated assault charges against the officer involved in the use-of-force, which presumptively allowed officers to use deadly force in response to such behavior. *Id*. at 236. Despite this factual and legal distinction, the Court finds based on the summary judgment evidence that, although deadly force was not used on Villarreal, some force was necessary to subdue Villarreal after his physical assault on officer Johnson. Accordingly, Villarreal must show that the use of some force was objectively unreasonable in the circumstances. *See Graham v. Connor*, 490 U.S. 386, 395–97 (1989). Therefore, the dispositive question in determining whether *Heck* applies to Villarreal's claim is as follows: Would a finding that Aung's use of force was objectively unreasonable necessarily call into question the validity of Villarreal's punishment or guilty finding in his disciplinary case for simple assault upon Johnson? If it is possible for Villarreal to have assaulted Johnson and for Aung's restraint force of Villarreal to have been objectively unreasonable, then *Heck* does not bar Villarreal's claim. *See Ballard v. Burton*, 444 F.3d 391, 398 (5th Cir. 2006).

This Court finds that Villarreal's claim necessarily invalidates the results of his disciplinary case because he challenges Aung's application of force to restore discipline, which challenges his own actions in assaulting another TDCJ officer. Thus, the Court finds Villarreal's claims are barred by the *Heck* doctrine. In the alternative, even if Aung's actions *could* be found objectively unreasonable without disturbing the findings of Villarreal's conviction for assault on

Johnson, this Court finds that the summary judgment evidence establishes Aung acted in an objectively reasonable fashion, as outlined below.

### C. Qualified Immunity and Necessary Force

"To prevail on an eighth amendment excessive force claim, a plaintiff must establish that force was not 'applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm' and that he suffered an injury." *Eason v. Holt*, 73 F.3d 600, 601-02 (5th Cir. 1996) (quoting *Hudson*, 503 U.S. at 7). Villarreal no longer disputes Armendarez's lack of involvement, so the claims of excessive force against Armendarez should be dismissed. However, Armendarez has alternatively asserted he is entitled to qualified immunity in the Joint Motion, and the Court finds that even if Villarreal persisted in his claims against Armendarez, this defendant would be entitled to qualified immunity. Even accepting as true Villarreal's initial allegations against Armendarez for his failure to intervene in the use of force, Villarreal has failed to create a fact question that such force was employed by state actors intending to cause *harm* versus intending to restore *discipline*. If the force employed by state actors was not excessive, then no state actor can be tasked with the failure to intervene in the use of such force. Thus, Armendarez is also entitled to qualified immunity.

There are disputed and undisputed facts in this case regarding defendant Aung. Nevertheless, Villarreal cannot prevail on his claim against Aung. In these situations, "[prison officials] are entitled to wideranging deference." *See Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir. 1998). The amount of force "that is constitutionally permissible … must be judged by the context in which that force is deployed." *Id.* (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)). The force used does not violate the cruel and unusual punishment clause when that force is reasonably necessary to subdue a recalcitrant prisoner. *Clemmons v. Greggs*, 509 F.2d 1338,

1340 (5th Cir. 1975). The summary judgment evidence demonstrates that the force used against Villarreal on January 31, 2015 (including by defendant Aung, if he in fact participated in the use of force at all), was used in order to restore and maintain discipline, not maliciously and sadistically to cause harm.

The Court also finds that defendant Aung is entitled to qualified immunity. Aung's actions[3] were objectively reasonable under the circumstances. The Court will not second-guess the actions of the officers responding to the assault on another officer by an inmate. Those actions must be quick in such a volatile situation in an effort to restore and maintain discipline.

Summary judgment is proper when the pleadings and evidence illustrate that no genuine issue exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). With the assertion of qualified immunity, and with defendant Aung meeting his initial burden, the burden now shifts to Villarreal to present competent evidence to establish a fact question exists. *See Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). The response must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Villarreal, despite his affidavit regarding Aung's involvement in the use of force, has not demonstrated a fact question that Aung acted with the intent to *harm* versus the intent to *restore discipline*. Thus, Aung is entitled to summary judgment on the issue of qualified immunity.

## V.   CONCLUSION AND RECOMMENDATION

Villarreal did properly exhaust his administrative remedies concerning the use of excessive force by TDCJ officers on January 31, 2015. However, Villarreal's claims for

---

[3] Although no evidence exists to show Aung participated in the force, the Court will allow Villarreal's affidavit to make such a showing for purposes of this determination that some parties acted in subduing Villarreal.

excessive force against defendants Armendarez and Aung should be dismissed as frivolous because they are barred by the *Heck* doctrine. In the alternative, even if not barred by *Heck*, Villarreal has failed to present evidence that creates a fact question regarding defendants Armendarez and Aung's entitlement to qualified immunity, and his claim should be dismissed on that ground as well. The summary judgment evidence establishes that some force was necessary in response to Villarreal's assault on Johnson.

For the reasons set forth above, it is the RECOMMENDATION of the Magistrate Judge to the Senior District Judge that the Joint "Motion for Summary Judgment" filed by defendants ARMENDAREZ and AUNG be GRANTED. It is further the RECOMMENDATION of the Magistrate Judge that defendants ARMENDAREZ and AUNG be dismissed from this lawsuit, as they are entitled to qualified immunity on all claims asserted against them; as such claims are the sole remaining claims of this lawsuit, it is also the RECOMMENDATION of the Magistrate Judge that this lawsuit be DISMISSED WITH PREJUDICE.

## VI.  INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED on February 21, 2019.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## *<u>NOTICE OF RIGHT TO OBJECT</u>*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).